Staples, J.,
delivered the opinion of the court.
This is an action founded upon a bond or single bill for the payment of money. The defendants plead, that it was executed by them in satisfaction of a debt due the plaintiff by the firm of Brown, Miller & Co., and delivered to the plaintiff as an escrow, upon condition it was to be likewise executed by two other members of said firm; but that in fact it had been executed only by one of them; and so the condition upon which the writing was to take effect had not been performed. The question raised by this plea, and which we are called upon to decide is, whether where a deed, perfect on its face, is delivered by the obligor or grantor directly to the obligee or grantee, it is competent to prove by parol evidence the delivery was upon a condition which has not been complied with, and thereby render the instrument inoperative as to the parties executing it.
In Sheppard’s Touchstone, volume 1, pages 58, 59, the rule is thus laid down: “ The delivery of a deed as an escrow, is said to be, where one doth make and seal a deed and deliver it unto a stranger, until certain conditions be performed, and then to be delivered to him, to whom the deed is made, to take effect as his deed. And so a man may deliver a deed, and such delivery is good. But in this case two cautions must be heeded: 1. That the form of words in the delivery of a deed in this manner be apt and proper. 2. That the deed be delivered to one that is a stranger to it, and not to the party himself, to whom it is made.” After discussing the first ground of caution at some length, *406 the learned author proceeds as follows: “ So it must be delivered to a stranger; for if I seal my deed and - deliver it to the party himself, to whom it is made upon certain conditions, &c., in this ease let the form of the words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently; and the party is not bound to perform the condition; for in traditionibus chartarum, non quod dictum, sed quod factum est inspicitur.” Another reason assigned for this rule of the common law by Lord Coke is, “the delivery is sufficient without speaking of any words; and then when the words, are contrary to the act, which is the delivery, the words are of none effect.”
The doctrine here laid down by these learned writers has been sometimes spoken of by judges as extremely technical and unsatisfactory. It may be so; but after a very careful examination I have not been able to find any well considered case in which that doctrine has been directly overruled.
In Hicks v. Goode, 12 Leigh 479, 490, Judge Cabell, in delivering the opinion of the court, conceded the distinction between a deed delivered as an escrow to the party to the deed, and one that is delivered to a stranger, and he was not disposed to controvert it. He said, “the reasoning on which the distinction is founded was not only technical but unsatisfactory to his mind. He considered it as settled, however, that if a deed be delivered to the party himself, to whom it is made as an escrow, but to become the deed of him who sealed it on certain conditions; in such case, whatever be the form of the words, the delivery is absolute, and the party is not bound to perform the conditions.”
The counsel who argued that case, on both sides, admitted that such is the law; too well settled for con *407 troversy. It was insisted, however, on behalf of the defendant, that the rule applied only to a deed perfect and complete on its face, requiring nothing to be done .to give it full efficacy as a deed, according to the intention, but the mere delivery. But where the instrument at the time it passes into the hands of the grantee or obligee is incomplete, and indicates clearly on its face that some other act is to be done to give it effect, according to the intention of all the parties, there it was insisted the rule did not apply, and it was competent to show by parol that the delivery was upon a condition which had not been performed. And so this court held; and it will be seen upon examination that the decision was placed upon that ground exclusively.
In Ward v. Churn, 18 Gratt. 801, Judge Joynes adverted to this rule of the common law: “He said it was strict and technical to the last degree; and yet he did not venture to deny that the doctrine is well settled.” In the course of his opinion he cites with approbation some observations of Chief Justice Best in the case of Hudson v. Revett, 15 Eng. C. L. R. 467, wherein the learned chief justice quotes Comyn, vol. 4, page 276, 4 A., Fait as saying: “If the deed be delivered to the party as an escrow, to be his deed on the performance of a condition, it is not his deed till the condition be performed, though the party happens to have it before the condition is performed.”
How it is most remarkable, be it said with all humility, that two judges, so distinguished for accuracy and learning, should have fallen into such an error. What Comyn does say is this:
“ So if it (the deed) be delivered to a stranger as an escrow, to be his deed upon performance of conditions, it is not his deed till the conditions are per *408 formed, though the party happens to have it before. 2 Rol. 25, 125, 45; Coke Lit. 36 a.
“Or he delivered to a stranger to keep till conditions be performed, 2 Rol. 25, 1, 40.
“ Or to be delivered to the party as his deed upon performance of a condition.”
Row this is relied upon by Chief Justice Best as authority for the position, that a deed may be delivered to the party upon condition, and it is good. But it will be perceived that Comyn means simply to affirm, that if the deed be delivered to a stranger, “ to be delivered to the party as his deed upon performance of a condition, it is not his deed till the conditions be performed, though the party happens to have it before.” That such was his meaning is manifest from the very next sentence, not noticed by the learned chief justice, in which he declares: “But a delivery cannot be to the obligee as an escrow.” 2 Cro. 85, 86.
And in division A 3, page 274, Comyn again declares, that “if an obligation be made to A, and delivered to A himself as an escrow, to be his deed upon performance of -a condition, this is an absolute delivery; and the subsequent words are void and repugnant.”
A more remarkable instance of an entire misconception of an author’s meaning has rarely been exhibited by a learned judge. If is worthy of observation, that Chief Justice Best himself does not assert the rule laid down by Sheppard is not sound law; he merely declares it a technical subtlety. The case of Hudson v. Revett, was decided upon the ground, that the deed was incomplete when it passed into the hands of the grantee; and the observations of the chief justice were wholly unnecessary to the decision.
There is one other case decided by an English court, *409 sometimes relied on as opposing the doctrine of the text in Sheppard and the other common law writers. I mean the case of Johnson et als. v. Baker, 4 Barn. & Ald. 440, in which it was held it might be shown by parol that a composition deed was delivered as an escrow, upon condition it should be void unless executed by certain other creditors, which was not done. It will be seen, however, that the instrument was a deed of composition, whereby payments were to be made to all the creditors, each of whom was to release his claim, and if any should refuse, the entire purpose of the deed was defeated. ISTor does it appear that the creditor, to whom the delivery was made, was then a party to the deed, and he was therefore in no condition to insist upon the estoppel.
With the exception of these cases, which, indeed, do not expressly controvert the principle, the English authorities, so far as I have seen, are uniform in their adherence to the doctrine for which I am contending.
In the United States the cases speak almost with one voice. -This is the more remarkable, because, in a large majority of the states, a strong disposition has been constantly manifested, either by judicial decision or by legislation, to rid the courts of those rules of the common law, which are regarded as purely technical. The rule in question has, however, been adhered to with an unanimity almost without parallel. It is impossible, with any just regard to the proper limits of an opinion, to quote from the numerous authorities upon this subject. It may not be improper, in a question of so much importance, never yet- settled in this state, to cite the opinions of distinguished judges in some few of the cases decided in the different states, ■and also the opinions of learned commentators who have written upon the subject.
*410 The first case is that of Simonlon’s estate, 4 Watts’ R.. 180, Pennsylvania.
Kenedy, J. “An agreement to deliver a deed as an-escrow to the person in whose favor it is made, and who is likewise a party to it, will not make the delivery conditional. If delivered under such an agreement, it will be deemed an absolute delivery,- and a consummation of the execution of the deed.”
“ To construe such agreements otherwise, would not only be putting it in the power of the party, in whose favor the deed is made, to practice a fraud upon the community by means of it, in obtaining a credit that otherwise would not be given to him, but would be opening a wide door for the introduction of frauds- and perjuries.”
Duncan et al. v. Pope, 47 Georgia R. 445.
Montgomery, J. “An escrow, ex vi termini, is a deed delivered to some third person, to be by him delivered to the grantee upon performance of some precedent condition by the grantee or another, or the happening-of some event. If delivered to the grantee or his agent, the delivery is complete, and the paper is not an escrow. It follows that the delivery of the deed to the attorneys of the bastard, carried the complete title in the property granted to the grantee, divested of all' parol conditions.”
Cin., Wil. and Zanesville R. R. Co. v. Iliff, 18 Ohio St. R. 235.
Brinkerhoff, J. “There can be no doubt, according to the uniform current of authority, that if, in this-case, the instrument of release had been, as a completed instrument, delivered to Carrol, simply as the agent of the company to procure the right of way, although the delivery may have been accompanied by verbal stipulations that the instrument should not *411 operate as a release until and unless certain conditions were first performed, the release would have been operative according to its terms, and the verbal stipulations, in respect to its operation after delivery, would have amounted to nothing.”
Ward v. Lewis, 4 Pick. R. 518.
Morton, J. “We aré therefore satisfied that the deed of indenture was delivered by the debtors to the assignees and to the creditors. It could not have been delivered as an escrow, because it was delivered to the parties; an escrow can be delivered only to a third person. It could not have been delivered to the parties conditionally, to take effect upon the happening of any future contingency, because this would be inconsistent with the terms of the instrument itself. Upon delivery it became an absolute deed, and went into immediate operation as to all who had executed it. If it had been the intention of the parties to make a conditional assignment, to take effect only upon the signature of the whole, or a major part of the creditors, that condition ought to have been inserted in the instrument itself. But to permit parties to a deed, purporting to be absolute, to show by parol evidence that it was conditional, and to avoid it for a non-performance of the condition, would be not only a violation of the fundamental rules of evidence, but productive of great injustice and mischief.”
Currie ‘v. Donald, 2 Wash. Va. R. 59.
Lyons, J. “The second objection is to the proof respecting the delivery. The parties have declared it to be sealed and delivered, and this is attested by the signature of four witnesses, who could not afterwards have been permitted to disprove it. This delivery we must consider as absolute, because if it had been intended as an escrow it ought to have been so stated.”
*412 2 Lomax’s Digest 38.
“Secondly, that the delivery of the deed as an - escrow be to a stranger; for if a person delivers a deed to the party himself, to whom it is made as an escrow upon certain conditions, the delivery is absolute, and the deed will take effect immediately; nor will the party to whom it is delivered be bound to perform the conditions.”
In 3 Washburn on Eeal Property 268, the doctrine is thus laid down : If the delivery is made to the party, no matter what may be the form of the words, the delivery is absolute, and the deed takes effect presently as the deed of the grantor, discharged of the conditions upon which the delivery was made.
To these authorities may be added the cases of Brackett v. Barney, 28 New York R. 333; Worrall v. Mann, 1 Seld. R. 238; Jackson v. Catlin, 2 John. R. 259, decided by the supreme court of New York. The case of Black v. Shreve, 13 New Jersey Eq. R. 456; the case of Herdman v. Bratton, 2 Har. R. (Del.) 396; the case of Cin., Wil. & Zanesville R. R. Co. v. Iliff, 13 Ohio St. R. 235; the case of Mad. & Ind. Plank R. Co. v. Stevens, 10 Ind. R. 1; the case of Brown v. Reynolds, 15 Snead R. (Tennessee) 639; Gibson v. Partee, 2 Dev. & Battle (N. C.) 530; Hagood v. Harly, Rich. Law R. 325; Graves v. Tucker, 10 Smeedes & Mar. (Miss.) 9; Firemens Ins. Comp. v. McMillan, 29 Alab. R. 147, 161; and the case of Moss v. Riddle, decided by the supreme court of the United States.
A doctrine sustained by such an array of authori1 ties, a doctrine which has survived all the changes and innovations of modern reform, must have something to commend it to the approbation of the courts beyond its mere antiquity. It is not to be overturned by denunciation. The chief argument against it is, *413 that it recognizes distinctions technical and unsatisfactory in the extreme.
It is said, for example, a deed may be delivered as an escrow to a stranger, or even to a coobligor, to be delivered by them to the obligee; and there can be no good reason why it should not be delivered directly to the obligee as an escrow. It would be easy to show that this distinction is not so technical and unsatisfactory as is imagined. But it does not concern me to vindicate that distinction. I am dealing only with the particular rule of the common law invoked in this case. The question is, whether this court can safely depart from it here. Whether it can overturn that which is so well established elsewhere, and so fully sustained by the concurring voice of able commentators and great judges.
It may be that the rule will sometimes lead to fraud and to grievous injustice; but what rule can be laid down that will not occasionally be perverted to purposes of mischief. The statutes of “ frauds and perjuries” were designed for the prevention of notorious evils; and yet constant experience attests that they are often but a cover for the perpetration of the grossest frauds.
In Towner v. Lucas’ ex’or, 13 Gratt. 705, the obligee induced one of the obligors to execute the bond as surety by the most solemn assurances that it was a mere matter of form, that the surety would never be required to pay any part of the debt, and that he, the obligee, would give him a written indemnity against any liability or damage.
This agreement was proved by the clearest evidence, and was found by the verdict of a jury upon an issue directed by the circuit court. This court held it was not competent to prove such an agreement by parol. *414 Judge Allen, in a very able opinion which has received the almost universal approbation of the profession, relied upon the common law maxim, that it would be inconvenient that matters in writing, made by advice and on consideration, and which finally import the certain truth and agreement of the parties, should be contradicted by averment of parties, to be proved by the uncertain testimony of “slippery memory.” He said, “ it is reasoning in a circle to argue that fraud is made out, when it is shown by oral testimony that the obligee, contemporaneously with the execution of the bond, promised not to enforce it. Such a principle would nullify the rule. The true question is, was there any such agreement. And- this can only be established by legitimate testimony. For reasons founded in wisdom, and to prevent frauds and perjuries, the rule of the common law excludes such oral testimony of the alleged agreement; and as it cannot be proved by legal evidence, the agreement itself, in legal contemplation, cannot be regarded as existing in fact. Neither a court of law or of equity can act upon the hypothesis of fraud where there is no legal proof of it.”
Most of the observations here made apply with pe- • culiar force to the question under discussion.
It is easy to see that the most solemn obligations given for the payment of money, are of but little value as securities, if they may at any future day, be defeated by parol proof of conditions annexed to the delivery of the instrument, and never performed. This case before us is in point. The bond in controversy was given in 1861, for a debt antecedently due, for which all the defendants are confessedly bound independently of the obligation. The plaintiff being no doubt well satisfied with his security, did not sue *415 till 1871. On the trial he is met with the defence, that the defendants executed the bond with the understanding that another person alleged to be jointly-bound with them for the debt should also execute the bond; and that it was delivered to the plaintiff upon that condition. The plaintiff and one of the defendants were the only witnesses examined; each giving his version of the transaction. The jury it seems, believed the plaintiff; but they might have believed the defendant with equal propriety. If we reverse the judgment of the court below upon the ground of the rejection of proper testimony, it is not improbable that upon a new trial a verdict may be found for the defendants. And it may be that such a verdict would be correct. The result would be in effect, however, that this most solemn deed of the parties is of no more value than the most informal parol promise to pay. It thoroughly exemplifies the observation in the case of Williams v. Geeen, Cro. Eliz. 884, that if such testimony is allowed “a bare averment without'any writing would make void every deed.”
A doctrine of this sort is perhaps still more mischievous as applied to deeds of conveyance—for the title of the grantee is liable at any time to be defeated by evidence establishing parol conditions accompanying the delivery of the deed. Ho safeguard can be provided against perjury or the mistakes of “slippery memory” in such cases. If parties desire to make the delivery of deeds conditional, it is easy to make such delivery to a stranger, or to insert in the instrument the terms of the contract.
Eor these reasons I am for adhering to the rule of the common law. In doing so, I do not mean to affirm that this rule will apply to every species of contracts in writing. There are cases in which it has *416 been held, that you may show the agreement was signed by mistake, or that it was signed on the terms that it should not be an agreement till money was paid, or something else was done. Pym v. Campbell, 88 Eng. C. L. R. 370, is one of these. But these cases, whether rightly decided or not, have no application to deeds; as to which delivery is the essence and constitutes the estoppel.
I am, therefore, for affirming the judgment of the circuit court: first, because that court ought to have sustained the demurrer to the plea; and, second, because the evidence offered by defendants and excluded was rightly excluded upon the grounds already stated. The judgment, being right, although upon a false issue, must of course be sustained.
Anderson, J., was not fully prepared to concur in the doctrine, that a delivery to a grantee in a deed on condition, is absolute and free from the conditions; but he would not dissent.
Judgment arrirmed.